# EXHIBIT B
# FDA Citizen Petition Response



Nicholas Isel
709 Mansfield Court
Oswego, IL 60543

Re: Docket Number FDA-2016-P-2955

Dear Mr. Isel:

This letter responds to your citizen petition, received by the Food and Drug Administration (FDA) on September 15, 2016 (the "Petition"). In the Petition, you request that the Commissioner of Food and Drugs amend 21 CFR 1271.270(d) "in regards to establishments involved in sperm and/or egg donation ART (Assisted Reproductive Technology) industries to require collection, upkeep, communication with donors/recipients of updates, and retention of all relevant personal and medical information from donors and recipients for a period of no less than 50 years instead of the currently required 10 year time span." In addition, you request that we amend 21 CFR 1271.270(d) to require that FDA's Center for Biologics Evaluation and Research store duplicate copies of records collected by reproductive tissue establishments for no less than 50 years in order to provide "document redundancy." You also request that we require that "[a]ll personal information from an intended donor… be collected prior to donation and made non-confidential to potential recipients."

As we understand the Petition, you contend that: 1) 10 years of record retention is insufficient "to satisfy the stated mission and authority" of Section 361 of the Public Health Service Act (PHS Act) (42 U.S.C. 264) to prevent the introduction, transmission, or spread of communicable diseases; 2) document redundancy would help in cases of "catastrophic natural disaster, accidental loss/destruction of data, or breakdown in lines of communication between the establishment and donors/recipients;" and 3) donor anonymity "can have several unintentional negative after-effects," including increased risk of consanguinity and the transmission of "disease/disability… to scores of children."

According to the Petition, you are a progeny of the "Repository for Germinal Choice." You state that you were unaware of your origins until age sixteen and, accordingly, were not able to seek records related to the process of your conception within the 10-year period during which the establishment would have been legally required to maintain such records. You also explain that you have since contacted the relevant individuals and were informed that the records no longer exist.

We appreciate your concern. However, after careful review and consideration, we deny the Petition for the reasons set forth below.

Page 2 – Nicholas Isel

**DISCUSSION**

**I.      BACKGROUND**

FDA is an agency within the Department of Health and Human Services (HHS) and, by delegation from the Surgeon General and the Secretary of HHS, has authority under section 361 of the PHS Act to:

> make and enforce such regulations as in [FDA's] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession.  For purposes of carrying out and enforcing such regulations, [FDA] may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in [FDA's] judgment may be necessary.

PHS Act § 361(a), 42 U.S.C. 264(a).

Under this authority, FDA has promulgated regulations in Title 21 of the Code of Federal Regulations (CFR), part 1271 (part 1271), regarding human cells, tissues, or cellular or tissue-based products (HCT/Ps).  Since HCT/Ps contain components from the human body, they pose some risk of carrying pathogens that could cause disease in health-care personnel or other handlers, recipients, and family members or other close contacts of recipients.

Included in the definition of HCT/Ps are reproductive cells and tissue, such as semen, oocytes, and embryos (see 21 CFR 1271.3(d) and 1271.3(l)).  FDA generally considers reproductive cells and tissues to be HCT/Ps that meet the criteria listed in 21 CFR 1271.10(a) for regulation solely under section 361 of the PHS Act and the regulations in part 1271.[1]

As mentioned, section 361 of the PHS Act authorizes FDA to make and enforce regulations to "prevent the introduction, transmission, or spread of communicable diseases."  Some of the requests in the Petition are for regulations to control the risk of transmission of genetic diseases or conditions (referred to, collectively, as "genetic diseases" for purpose of this response).  Based on our current scientific understanding, we do not consider genetic diseases, including mental illness, to be "communicable diseases" within the meaning of section 361 of the PHS Act because genetic diseases do not arise as a result of an infectious agent or its toxic products.[2]

---

[1] See, *e.g.,* FDA's 2007 guidance document, *Regulation of Human Cells, Tissues, and Cellular and Tissue-Based Products (HCT/Ps): Small Entity Compliance Guide*. https://www.fda.gov/downloads/biologicsbloodvaccines/guidancecomplianceregulatoryinformation/guidances/tissue/ucm062592.pdf

[2] Although the term "communicable diseases" is not specifically defined in section 361 of the PHS Act, FDA interprets the term to be limited to illnesses that are due to infectious agents or their toxic products.  For example, see 21 CFR 1271.150(a), which states that "[c]ommunicable diseases include, but are not limited to, those transmitted by viruses, bacteria, fungi, parasites, and transmissible spongiform encephalopathy agents."  This is also consistent with how the term "communicable diseases" is defined in other parts of FDA's regulations (see 21 CFR 1240.3(b) and 21 CFR 1250.3(b)).

Page 3 – Nicholas Isel

Instead, genetic diseases occur as a result of a genetic defect or gene mutation that is due to a change in the sequence of DNA.[3,4,5]  Some genetic diseases are caused by gene mutations that can be inherited, whereas other genetic diseases can be due to acquired gene mutations that result from either a spontaneous new mutation of a gene or environmental exposure.[6]  There are also genetic disorders that are "multifactorial inheritance disorders," meaning they are caused by a combination of inherited mutations in multiple genes and exposure to certain environmental factors.[7]  Since we do not consider genetic diseases to be "communicable diseases" within the meaning of section 361 of the PHS Act, we decline to issue regulations for the purpose of preventing the introduction, transmission, or spread of genetic diseases.


## II.     RECORDKEEPING

### A.     Extension of Required Record Retention Period

The Petition requests that FDA amend 21 CFR 1271.270(d) to require that sperm and/or egg donation ART establishments retain records for no less than 50 years.  You assert that "[n]o less than 50 years of record retention and availability is sufficient to stop the potential proliferation of genetic ailments."  You further state that "[c]ertain physical/mental illnesses do not present themselves until later in life and introduction, transmission, and/or spread of these diseases are currently not monitored."

As a preliminary matter, we note that 21 CFR 1271.270 does not apply to reproductive HCT/Ps described in 21 CFR 1271.10 and regulated solely under section 361 of the PHS Act and part 1271 or to the establishments that manufacture them (see 21 CFR 1271.150(c)(3)).  However, these establishments are subject to 21 CFR 1271.55(d)(4), which states, "You must retain the records pertaining to a particular HCT/P at least 10 years after the date of its administration, or if the date of administration is not known, then at least 10 years after the date of the HCT/P's distribution, disposition, or expiration, whichever is latest."  Under this existing record retention requirement, there is a possibility that records for a reproductive HCT/P would be required to be retained for decades.  For example, if a reproductive HCT/P has no expiration date and is cryopreserved for long-term storage, records pertaining to that HCT/P would need to be retained for the time period between the donation and transfer of the HCT/P, which could be decades, plus an additional ten years after transfer.  FDA is not aware of a standard expiration period used for cryopreserved reproductive HCT/Ps.  Not assigning an expiration date increases the possibility that records pertaining to an HCT/P will need to be retained for multiple decades.

---

[3] Iyengar SK, Elston RC.  The Genetic Basis of Complex Traits: Rare Variants or "Common Gene, Common Disease?"  Methods Mol Biol 2007;376:71-84.  https://www.ncbi.nlm.nih.gov/pubmed/17984539

[4] Avramopoulos D.  Recent Advances in the Genetics of Schizophrenia.  Mol Neuropsychiatry 2018 Jun;4(1):35-51. https://www.ncbi.nlm.nih.gov/pubmed/29998117

[5] Tayoun ANA, Krock B, Spinner NB.  Sequencing-based diagnostics for pediatric genetic diseases: progress and potential.  Expert Rev Mol Diagn 2016 Sep;16(9):987-999. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5040519/

[6] See footnotes 3,4, and 5.

[7] See footnote 5.

Page 4 – Nicholas Isel

We have not evaluated your assertion that a required record retention period of at least 50 years is necessary to prevent the transmission of genetic diseases. As discussed, based on our current scientific understanding, we do not consider genetic diseases to be "communicable diseases" within the meaning of section 361 of the PHS Act. Accordingly, we decline to issue regulations to address genetic disease transmission.

The Petition does not adequately explain why expanding the required record retention period beyond 10 years is necessary for preventing the introduction, transmission, or spread of communicable diseases. When determining that a 10-year record retention requirement would be appropriate, FDA took into account, among other considerations, that certain communicable diseases appear to have long latency periods (see 69 FR 29786 at 29787 (May 25, 2004)). Additionally, a requirement for retaining records for 50 or more years may create a significant burden on and be impractical for some tissue establishments. Accordingly, although we may, in the future, determine that extending the required record retention period is necessary to prevent the introduction, transmission, or spread of communicable diseases, we decline to expand the requirement at this time.

**B.      Storage of Duplicate Records**

The Petition requests that FDA's Center for Biologics Evaluation and Research (CBER) "store duplicate copies of all relevant personal and medical records collected by sperm and/or egg donation ART industries for a period of no less than 50 years to provide 'document redundancy' in case of catastrophic natural disaster, accidental loss/destruction of data, or breakdown in lines of communication between the establishment and donors/recipients."

Reproductive tissue establishments are already required to retain records in accordance with the applicable requirements in part 1271, and FDA assesses compliance with such requirements during its inspections. In addition, we understand that some reproductive tissue establishments maintain accreditation with the American Association of Tissue Banks (AATB) and follow AATB's Standards for Tissue Banking, which provides for the maintenance of a backup file of all data (records) that are entered into an electronic system and subsequently used for decision-making purposes.

Specifying a particular means by which these establishments store duplicate copies of all relevant personal and medical records does not appear at this time to be necessary to prevent the introduction, transmission, or spread of communicable diseases. Additionally, maintaining copies of all relevant personal and medical records collected by reproductive tissue establishments falls outside the role and purview of FDA. Accordingly, we decline to require that such copies be stored by CBER.

Page 5 – Nicholas Isel

### III.     TRANSPARENCY

#### A.     Collection, Upkeep, and Communication of Updates

You request that FDA require "collection, upkeep, [and] communication with donors/recipients of updates."  Under subpart C of part 1271, HCT/P establishments are required to test cell and tissue donors for evidence of infection due to relevant communicable disease agents and also screen such donors for risk factors for and clinical evidence of relevant communicable disease agents or diseases unless an exception applies.  The Petition fails to specify why the collection of additional information in the form of "updates" is necessary to prevent the introduction, transmission, or spread of "communicable diseases" within the meaning of section 361 of the PHS Act.  Moreover, the Petition does not specify the nature of the updates that would be collected, maintained, and communicated under such a requirement.  Accordingly, we do not have a sufficient basis on which to evaluate such a request.

We recognize the importance of HCT/P recipients' being fully informed regarding the risks of communicable disease transmission.  Under current regulations, with limited exceptions, a donor with reactive results from the required testing for relevant communicable disease agents is considered ineligible, and an HCT/P from such a donor must not be used (e.g., see 21 CFR 1271.45(c) and 21 CFR 1271.50(b)(2)).  In the limited situations in which an HCT/P may be used from a donor with reactive test results, the HCT/P must be prominently labeled with warnings regarding the reactive test results (21 CFR 1271.65(b); 21 CFR 1271.90(c)).[8]  For example, an HCT/P from an ineligible directed reproductive donor with reactive test results must be labeled with the statement, "WARNING:  Advise patient of communicable disease risks," and the statement, "WARNING:  Reactive test results for (name of disease agent or disease)" (21 CFR 1271.65(b)(2)).  In that case, the establishment that manufactured the HCT/P would also be required to document that it notified the physician using the HCT/P of testing and screening results (21 CFR 1271.65(b)(3)).  Additionally, in the limited situations in which an HCT/P from a donor who was not tested may be used, the HCT/P must be prominently labeled regarding the absence of such testing (21 CFR 1271.90(c)).  We also note that physicians are under legal and ethical obligations, requiring them to discuss the risks of communicable disease transmission stemming from the use of HCT/Ps.  FDA relies on physicians to meet these obligations when discussing procedures involving HCT/Ps with recipients.

Additionally, to the extent you request updates pertaining to communicable diseases, we note that if establishments were required to collect these updates from donors or recipients after donation or transfer, they would generally have no way to ensure that the donors or recipients would provide them with the required information.  Moreover, even if such updates were collected, they are unlikely to provide any useful information regarding relevant communicable disease agents or diseases that the offspring may have

---

[8] These labeling requirements would not apply to an HCT/P from a donor whose specimen tests reactive on a non-treponemal screening test for syphilis and negative on a specific treponemal confirmatory test and who is determined to be eligible (see 21 CFR 1271.50(b)(2); 21 CFR 1271.80(d)(1)).

Page 6 – Nicholas Isel

at birth.  Although immunologic and biologic factors are specific to a particular communicable disease agent, based on available scientific data, we believe the current time frame during which a donor specimen must be collected for testing is sufficient with respect to determining the risk of communicable disease transmission associated with an HCT/P.  Pursuant to 21 CFR 1271.80(b), for most HCT/Ps, including semen, establishments must collect the donor specimen for testing at the time of recovery of cells or tissue from the donor or up to seven days before or after recovery.[9]  For donors of certain HCT/Ps, including oocytes, the donor specimen may be collected for testing up to 30 days before recovery.  Further, with limited exceptions, anonymous semen donors must have repeat donor testing at least 6 months after the date of donation, as described in 21 CFR 1271.85(d).  The donated semen must be quarantined under 21 CFR 1271.60(a) until retesting is complete and the donor is determined to be eligible.  This allows additional time for any communicable disease agent or disease to manifest if, by chance, the donor was in the "window period" of detectability, further reducing the risk of transmission of infection.

**B.**        **Collection and Disclosure of Personal Donor Information**

You request that "[a]ll personal information from an intended donor… be collected prior to donation and made non-confidential to potential recipients for the purposes of individual/public health and well-being."  The Petition contends that "[t]he current practice of 'Donor Anonymity' can have several unintentional negative after-effects."  Specifically, you assert that anonymous donation can result in an increased risk of consanguinity as well as a "misleading sense of security instilled in the potential donor… through the establishment imparting a false sense of protection and 'guaranteed donor anonymity,'" in light of the increased availability of commercial DNA testing.  Such concerns are unrelated to preventing the introduction, transmission, or spread of "communicable diseases" within the meaning of section 361 of the PHS Act, and therefore, we decline to promulgate regulations to address these concerns.

You also contend that anonymous donation can result in disease transmission when diseases are not self-reported by donors due to neglect, misrepresentation, or lack of knowledge regarding existing diseases.  However, we are unaware at this time of any causal relationship between donor anonymity and transmission of communicable diseases within the meaning of the PHS Act, and you fail to provide any information to demonstrate such a relationship.  Moreover, existing regulations regarding donor testing help to reduce the risk of communicable disease transmission in the circumstances you describe (see 21 CFR 1271.80 and 1271.85).  Accordingly, we decline at this time to require that all personal information from an intended donor be collected before donation and provided to potential recipients.

---

[9] With repeat semen donors from whom a specimen has already been collected and tested and for whom retesting is required under 21 CFR 1271.85(d), collecting a donor specimen at the time of each donation is not required (21 CFR 1271.80(b)(2)).

Page 7 – Nicholas Isel

## IV.    CONCLUSION

After careful consideration of the issues raised in the Petition and based on the reasons noted above, FDA denies the Petition in its entirety.

Sincerely,

Peter Marks, M.D., Ph.D.
Director
Center for Biologics Evaluation and Research

cc:     Division of Dockets Management