# Exhibit C Petition for Reconsideration



The Historic Pierson Building
263 King Street
Crystal Lake, Illinois 60014

P:  (815) 479-9733
F:  (815) 425-9773
E:  mrozovics@rozovicslaw.com

www.RozovicsLaw.com

September 8, 2018

<u>Hand Delivered and Sent Via Federal Express</u>

Division of Dockets Management
Food and Drug Administration
Department of Health and Human Services, rm 1-23
5630 Fishers Lane, rm. 1061
Rockville, MD 20852

> RE:  Citizen Petition for Reconsideration
> Docket Number FDA-2016-P-2955
> Filing Date 09/27/2016
> Date of Citizen Petition Response 08/13/2018

On behalf of Petitioner, Nicholas Isel ("Isel"), we respectfully submit this Petition for Reconsideration of the denial of the Citizen Petition dated August 13, 2018 (Citizen Petition Response).

## A.  Decision Involved

Petitioner is progeny of the "Repository for Germinal Choice" who was born on July 23, 1985, but was not made aware of his origins until he was 16 years old.  Prior to that date, his parents/legal guardians did not inform him that his biological father provided donated sperm through the Repository for Germinal Choice.  Petitioner noted in his Citizen Petition that, even had he been made aware of his origins at an earlier date, he would have been under a legal disability the entire time, and therefore unable to act on his own behalf to request protection of the critical files of medical and genetic information which would be useful to him in his daily life.  Although he has been fortunate enough to identify his donor (Donor Coral #36), and identify some of his siblings who were created through the use of the same donor, he still lacks a complete medical history and records relating to his biological father.  The records which the FDA mandated be maintained  in the reproductive tissue facility in question were destroyed before Petitioner learned of his parentage.  There were 72 public comments to the Petition, including supporting documents.

The Citizen Petition Response was received by Petitioner on August 13, 2018 and published the same date.  Petitioner requests, pursuant to 21 C.F.R. §10.33, that the Commissioner of Food and Drugs ("the Commissioner") at the Food and Drug Administration ("FDA") reconsider its decision in Docket No. FDA-2016-P-2955, to

1

deny the Petitioner's request to amend Title 21 Code of Federal Regulations Part 1271.270(d) in regards to establishments involved in sperm and/or egg donation Assisted Reproductive Technology ("ART") industries to require collection, upkeep, communication with donors/recipients of updates, and retention of all relevant personal and medical information from donors and recipients for a period of no less than 50 years, instead of the currently required 10 year time span.

## B. Action requested

Upon reconsideration of this matter, Petitioner requests Commissioner to take the following action:

1. Amend Title 21 Code of Federal Regulations Part 1271.270(d) in regards to establishments involved in sperm and/or egg donation ART (Assisted Reproductive Technology) industries to require collection, upkeep, communication with donors/recipients of updates, and retention of all relevant personal and medical information from donors and recipients for a period of no less than 50 years instead of the currently required 10 year time span.
2. Amend Title 21 Code of Federal Regulations Part 1271 to provide that, for the 50 year period of time set forth in Section 1 above, all personal information from an intended donor or a past donor shall be available to recipients and offspring of the donor, for the purposes of individual/public health and well-being.

## C. Statement of grounds

Initially, it should be noted that Petitioner is dropping the action requested in Section A(1)(B) of his Citizen Petition, to wit, the request for document redundancy, for purposes of this Petition for Reconsideration.

Further, the extent to which Petitioner is seeking reconsideration of the Agency's denial of his Citizen Petition on Section A(1)(C), relating to the disclosure of personal information from the donor, is limited to providing the donor number and personal and family medical history and all related medical records and testing results. The Petitioner recognizes that the donor may have certain competing rights to privacy, and without taking a position as to the primacy of his rights versus those of the donor, will limit the information sought in this Petition for Reconsideration to take into account such considerations.

<u>Legal Standard</u>

The Commissioner may grant a petition for reconsideration if the Commissioner determines the petition to be in the public interest and in the interest of justice (21 CFR §10.33(d)). Section 10.33(d) provides that the Commissioner *shall* grant a petition for reconsideration if the Commissioner determines that all of the following apply:

(1) The petition demonstrates that relevant information or views contained in the administrative record were not previously or not adequately considered.

(2) The petitioner's position is not frivolous and is being pursued in good faith.

2

(3) The petitioner has demonstrated sound public policy grounds supporting reconsideration.

(4) Reconsideration is not outweighed by public health or other public interests.

21 CFR §10.33(d). All of these factors are met, as demonstrated below.

Petitioner does not merely disagree with the Agency's conclusions and is not simply attempting to engage in a scientific dispute. However, the failure of the FDA to amend regulations as set forth in the Citizens Petition has the inevitable result of sacrificing the interests of the Petitioner and those born in a similar position to him, simultaneously ignoring the real-life 21st century medical requirements of an entire generation of children born from late 20th century technology.

The FDA failed to examine the issues within the scope of the genetic disease transmission, relying on definitions of sections which were not germane to the Citizens Petition. Refusing to revisit the issues set forth in the Citizens Petition because the rules as originally promulgated did not contemplate the present-day mental health or genetic health of the offspring of sperm or egg donors is a failure to meet the mandate provided by Congress to comprehensively regulate this industry. The failure of the existing regulations to contemplate the difficulties of progeny such as Isel is *precisely* why new regulations must be promulgated, particularly when the old regulations divest this new group of their Constitutional Rights to receive and maintain their own personal, health, and genetic information. Isel and those like him had no ability to opt-in or opt-out of the destruction of their personal, health and genetic information. Reconsideration of the Petition would, therefore, be "in the public interest and in the interest of justice" 21 CFR §10.33(d).

The breadth of arguments and legal support set forth below demonstrate the good faith of Petitioner.

A. IT IS ARBITRARY AND CAPRICIOUS TO REFUSE TO INITIATE RULEMAKING AND LIMIT REGULATION OF HCT/Ps TO THE PREVENTION OF COMMUNICABLE DISEASES WHILE SPECIFICALLY EXCLUDING THE TRANSMISSION OF GENETIC DISEASE BETWEEN SPERM/OOCYTE DONORS AND THEIR PROGENY, WHEN THE REGULATIONS IN THIS FIELD ARE INTENDED TO BE "COMPREHENSIVE".

In this Petition for Reconsideration, Isel requests that the FDA correct is errors in statutory and regulatory interpretation and to amend Part 1271.270(d) in regards to establishments involved in sperm and/or egg donation Assisted Reproductive Technology ("ART") industries to require collection, upkeep, communication with donors/recipients of updates, and retention of all relevant personal and medical information from donors and recipients for a period of no less than 50 years, instead of the currently required 10 year time span. This is necessary in order to stop the proliferation of genetic ailments

3

which can result in severely debilitating physical and/or mental disability that can leave the sufferer incapable of functioning self-sufficiently and contributing as a productive member of society. Certain physical/mental illnesses do not present themselves until later in life and introduction, transmission and/or spread of these diseases are currently not monitored. The FDA did not include proper and well-reasoned reasons for its denial of this petition, and was therefore an unlawful denial of the Citizen Petition which was arbitrary and capricious and otherwise not in accordance with law. Administrative Procedure Act, 5 U.S. C. §706(2)(A).

The Supreme Court discussed the "arbitrary and capricious" standard in Motor Vehicle manufacturers, Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983):

> The agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Burlington Truck Lines, inc. v. United States*, 371 U.S. 156, 168, 83 S. Ct. 239, 245-6, 9 L. Ed 2d 207 (1962). . . . Normally an agency rule would be arbitrary and capricious if the agency has relied on factors which congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." (citations omitted) 463 U.S. at 42-43, 103 S. Ct. at 2866-2867.

As noted in the Guidance for Industry[1], Regulation of Human Cells, Tissues and Cellular and tissue-Based Products (HCT/Ps), Small Entity Compliance Guide, the nature of the regulations set forth in 21 CFR Part 1271 had the exact purpose of providing "a comprehensive regulatory program for the regulation of human cellular and tissue-based product (now called human cells, tissues, and cellular and tissue-based products or HCT/Ps), which prior to 1997 was "highly fragmented". It makes no sense for the FDA to claim that its purpose is to provide a "comprehensive regulatory program" but then simultaneously claim that regulations to control the risk of transmission of genetic diseases and conditions ("genetic diseases") is outside of the scope of its mandate.

It is uncontroverted that the industries discussed in the Citizens Petition are already regulated by the FDA in 12 CFR Part 1271. The purpose of Part 1271.1 is to "create an electronic registration and listing system for establishments that manufacture human cells, tissues, and cellular and tissue-based products (HCT/P's) and to establish donor-eligibility, current good tissue practice, and other procedures to prevent the introduction, transmission, and spread of communicable diseases by HCT/P's." All reproductive tissues are within the scope of the rules, §1271.3(d), which means they must

---

[1] See, *e.g.,* FDA's 2007 guidance document, *Regulation of Human Cells, Tissues, and Cellular and Tissue-Based Products (HCT/Ps): Small Entity Compliance Guide*. https://www.fda.gov/downloads/ biologicsbloodvaccines/guidancecomplianceregulatoryinformation/guidances/tissue/ucm062592.pdf

4

be "comprehensively regulated" per the FDA's 2007 guidance document. Additionally, the issues of extending the time for storage and destruction that were raised in the Citizen Petition are specifically within the scope of the rule, both within the definition of "manufacture" itself in 12 CFR 1271.3(e), as well as within the rules on storage and destruction.

Agency decisions that rely on factors that entirely fail to consider important aspects of problems, or that offer explanations for decisions that run counter to the evidence before the Agency, are arbitrary and capricious. *Bluewater Network v. Salazar*, 721 F. Supp. 2d 7 at 22 (D.D.C. 2010) (internal quotations omitted). Confusingly, the Agency claims the Citizen Petition does not adequately explain why expanding the required record retention period beyond 10 years is necessary for preventing the introduction, transmission, or spread of communicable diseases (Response, at p.4), even though the destruction of Isel's own personal records clearly reflects the need for such records to be preserved. The FDA failed to provide any reasoning showing that the interests of people such as Petitioner were taken into account, and merely vaguely proclaimed, "[w]hen determining that a 10-year record retention requirement would be appropriate, FDA took into account, among other considerations, that certain communicable diseases appear to have long latency periods." (citations omitted). Indeed, the FDA's attempt to explain its recognition of "the importance of HCT/P recipients' being fully informed regarding the risks of communicable disease transmission" (Response, Part III, p. 5) completely misses the mark. The Agency only considered those people who received HCT/P materials as a participant in the process of the creation of human life. The actual progeny, or product, of that process – the child – the Petitioner, was never considered. Not a single citation provided in the FDA's Response relates in any way whatsoever to the interests of the child born as a result of the FDA's regulatory actions surrounding HCT/Ps.

The FDA simply did not contemplate Isel's existence in 2004. Nor did they contemplate that someone like Isel could desire the genetic information from his sperm donor, in order to better his own life, the life of his family, and his own children. Now that we have called their attention to the Agency's oversight, it is error for the FDA not to act to amend the regulations. Despite the fact that the sole purpose of a sperm or egg donor is to create a human life, it is clear that the current version of the FDA regulations in Part 1271 never contemplated the actual existence of someone like Petitioner, or that such a person may wish to exercise his rights to obtain information about his genetic makeup.

Similarly, the FDA made inconsistent claims in two different sections of its Response, first claiming, without evidence or requiring an environmental impact or cost study, that "a requirement for retaining records for 50 or more years may create a significant burden on and be impractical for some tissue establishments." (Response, at p.4, Sec. II(A)). Yet, in the very next section, II(B), the denial of Petitioner's request for storage of duplicate records is based upon the following statement "Reproductive tissue establishments are already required to retain records in accordance with the applicable requirements in part 1271, and FDA assesses compliance with such requirements during

5

its inspections. In addition, we understand that some reproductive tissue establishments maintain accreditation with the American Association of Tissue Banks (AATB) and follow AATB's Standards for Tissue Banking, which provides for the maintenance of a backup file of all data (records) that are entered into an electronic system and subsequently used for decision-making purposes." Assuming this information recited in Section II(B) of the Response is correct, then why would there be any additional "significant burden" or "impracticality" for keeping the already uploaded and backed-up electronic records a longer period of time. The FDA's contradictory statements in their Petition make their denial of the Citizen Petition arbitrary and capricious.

The FDA's statements that they have no guarantee that donor information would be collectable from older donors, if a new regulation were to be enacted or amended, has no logical connection with the request made by Petitioner. If information could not be obtained, then no information would be available. If, however, information were obtainable, then it is the FDA's responsibility to promulgate rules to maintain and preserve these materials until such time as the recipients, eg., the children created by the semen or egg donations, reach the age of majority and are able to take necessary decisions. No regulations would ever be passed if an agency said they must have 100% updateable information in all past cases. The FDA cannot ignore its obligations simply because some older information is not available.

The FDA's refusal or failure to review current standards is arbitrary and capricious action under the APA. As set forth in Section 361 of 42 U.S.C. 264, of the Public Health Service Act, there is an inclusive nature of the creation of regulations, noting that the Surgeon General and Secretary of HHS are authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases", inter alia, between and among the States. The actions to be taken are not exclusive to those listed, and include "other measures, as in his judgment may be necessary." PHSA, Sec. 361(a).

In addition to the foregoing, the FDA's mission is to "promote the public health by promptly and efficiently reviewing clinical research and taking appropriate action on the marketing of regulated products in a timely manner" and to protect the public health by ensuring that "human . . . drugs are safe and effective" 21 U.S.C. §393(b)(2)(B) and "there is reasonable assurance of the safety and effectiveness of devices intended for human use." 21 U.S.C. §393(b)(2)(D). further, to the extent the HCT/Ps require additional science, medicine, and public health issues, the FDA is required to consult with experts in the field, and further act in cooperation with "consumers" and "users" of "regulated products". 21 U.S.C. §393(b)(4).

It is completely arbitrary and capricious, and an abdication of the very essence of the FDA's authority, to ignore what is happening to the children who "consume" or "use" every single day of their lives the genetic material from semen or egg donors which are contained within the definition of HCT/Ps. The FDA has an absolute duty to make amendments as set forth in the Citizen Petition now that they have been made aware of the devastating effect that these "materials" have upon the "consumers" and "users" of

6

these FDA regulated materials.  Failing to act is creating a public health emergency where progeny are unaware of their genetic mutations or defects, and therefore cannot inform or protect themselves, their own children, or the public about the implications.

Instead of complying with its duty to comprehensively regulate the field of HCT/Ps, the FDA stops its regulation at the language where its original regulations left off.  This is contrary to law.  In *American Horse Protection Ass'n, Inc. v. Lyng*, 812 F.2d 1, 5 (D.C. Cir. 1987), that court reviewed an agency's refusal to initiate rulemaking to determine whether that decision was "reasoned" in order to examine whether the agency considered relevant factors and explained the facts and policy concerns relied upon.  Here, like *in American Horse*, the FDA improperly failed to consider the criticisms and alternatives raised by Mr. Isel in his Citizen Petition, particularly the inclusion of genetic transmission of diseases, including mental illness, as within the definition of "communicable diseases", since semen and oocytes which have their sole purpose to be donated as to create new human life can transmit disease through their genetic makeup.

Unfortunately, the FDA never reached the issue of the proper regulations, as it refused to address any effect semen and oocytes can have upon the progeny they create in any respect.  To reach this conclusion, the Agency engaged in a convoluted interpretation of statutes which were unrelated to semen or oocyte donors.  In their Citizen Petition Response, the FDA assumes the very proposition that it attempts to prove, by relegating the identification and definition of "communicable diseases" into footnote 2 at the very outset of its argument.  The fact that the term "communicable diseases" is not specifically defined in section 361 of the PHS Act does not mean that FDA should assume, in a footnote, that it is a definition of an exclusionary nature.  The citation provided by the Agency, indicating that various sections of the Code of Federal Regulations not at issue here state that "[c]ommunicable diseases *includes, but are not limited to*, those transmitted by viruses, bacteria, fungi, parasites, and transmissible spongiform encephalopathy agents."  (*emphasis added*)  Section 21 CFR §1271.75(1) also contains a non-exclusive list of screening for "[r]isk factors for, and clinical evidence of, relevant communicable disease agents and diseases, including . . ." The Agency attempts to rewrite the CFR in order to interpret "*includes, but are not limited to*" to mean the equivalent of "*includes these particular infectious agents or their toxic products, and absolutely no other ones.*"

The Agency's position is not consistent with basic canons of statutory construction, which indicate that where the language of the statute is clear, it should be interpreted as written.  Thus, this is not a situation where the Agency's interpretation to exclude a category would be given the Chevron deference, relying upon *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct 22778, 81 Led. 2d 694 (1984), since in this case Congress' express purpose was to have the FDA promulgate rules under Part 1271 relating to all aspects of HCT/Ps, including semen and egg donors.  Therefore, the FDA cannot abdicate responsibility merely by saying that the regulations as originally written did not contemplate or regulate a problem which even the FDA now admits exists – that semen and/or oocyte donors can transmit genetic diseases and mutations to their progeny, and the human beings who are created from their

7

HCT/Ps have no ability to know of their genetic makeup, track any problems, or request preservation of documents until they reach the age of majority and learn of their origins.

Further, since the preservation of records relating to a human being's own genetic makeup does not involve matters of scientific inquiry and technical expertise, there is no need to provide the Agency with the higher degree of deference under *Chevron*. *Id*., 476 U.S. at 843-45. It is highly likely that the reason for reference to certain tests for STDs in Part 1271 relates to the fact that at the time of drafting of the statutory section, these were the tests which were widely available to the manufacturers of HCT/Ps during the original promulgation dates in the late 1990s and early 2000s, and which had approval of the FDA (a requirement under Part 1271 for acceptable testing). However, as commercial DNA tests have become more prevalent and approved by the FDA in recent years, the regulations have not kept up with the technological changes. The Petition for Reconsideration should be granted so that the conditions which are more readily identifiable, and which are communicable through semen and oocyte donations, are properly disclosed and regulated by the FDA.

Even if the definition of "communicable diseases" did not strictly include the issues raised in the Citizen Petition, this would not be the end of the inquiry required by the FDA in order to adequately evaluate the petition, as part of the FDA's mandate is to establish donor-eligibility and good tissue practice. A review of this case does not require review of complex scientific or technical data. Genetic diseases are, by their nature, the most invasive of diseases. The Petitioner wholly adopts, for the purposes of this Petition for Reconsideration, the statement in the FDA's Response defining how a genetic disease may arise:

> Instead, genetic diseases occur as a result of a genetic defect or gene mutation that is due to a change in the sequence of DNA. Some genetic diseases are caused by gene mutations that can be inherited, whereas other genetic diseases can be due to acquired gene mutations that result from either a spontaneous new mutation of a gene or environmental exposure. There are also genetic disorders that are "multifactorial inheritance disorders," meaning they are caused by a combination of inherited mutations in multiple genes and exposure to certain environmental factors.

Citizen Petition Response, at p.3.

Unfortunately, this scientific definition does not make genetic diseases less needing of FDA regulation, but actually demonstrates why the rule change is needed and the Citizen Petition should have been granted. As noted in the FDA's 2007 Guidance Document, the historical purpose which led to the drafting of 21 CFR Part 1271 was to create a comprehensive regulatory program for HCT/Ps and do away with the fragmented approach which had previously existed. It would be an absurd interpretation of the statute to claim that Congress intended the FDA to regulate HCT/Ps, but only to the extent external "infectious agents or their toxic products" affect those tissues, while simultaneously ignoring the most dangerous damage that can be done by tissues used to

8

create a new human life: the presence of gene mutations or gene defects, or the possibility that siblings or cousins may procreate without their knowledge, thereby causing magnification of such genetic mutations or defects.

At the most basic level, part of the FDA's job under Part 1271 is to make sure that the HCT/Ps are not, in and of themselves, toxic products. At the very least, the FDA must preserve the evidence of any genetic toxicity of any type or degree, including gene mutations or gene defects, which are contained in the semen or ovum used to create a new human life, until that baby reaches the age of majority and has a reasonable opportunity to learn about their genetic makeup from a semen/oocyte donor whose donated HCT/Ps were regulated by the FDA. The refusal of the FDA to regulate this area is contrary to its mandate from Congress, and is a de facto denial of the very existence of an entire group of United States Citizens, to wit, those born from semen or egg donors.

B. THE FDA'S DENIAL OF THE CITIZEN PETITION WAS CONTRARY TO ISEL's CONSTITUTIONAL RIGHTS UNDER BOTH THE U.S. AND ILLINOIS CONSTITUTIONS TO GAIN ACCESS TO AND PRESERVE, WITHOUT GOVERNMENT INTERFERENCE, HIS OWN PERSONAL INFORMATION, HEALTH INFORMATION, AND GENETIC INFORMATION.

The FDA improperly denied Isel's Citizen Petition by issuing a response which de facto divested Petitioner, and those similarly situated to him, of his constitutional rights, power, and privileges. See, Administrative Procedure Act, 5 U.S. C. §706(2)(B). As a citizen of Illinois, Isel has constitutional rights under both the Illinois and United States Constitutions. Petitioner's rights under laws such as the Genetic Information Nondiscrimination Act of 2008, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, HIPAA, and the Family and Medical Leave Act of 1993 were directly impacted when the FDA authorized destruction of his semen donor's medical samples and information prior to the time Isel reached the age of majority. For example, under the Genetic Information Nondiscrimination Act of 2008 (GINA), 410 ILCS 513/5, "the public health will be served by facilitating voluntary and confidential nondiscriminatory use of genetic testing information" and "the use of electronic health record systems and the exchange of patient records, both paper and electronic, through secure means, including through secure health information exchanges, should be encouraged to improve patient health care and care coordination, facilitate public health reporting, and control health care costs, among other purposes." 410 ILCS 513/5 (3) and (4). The Privacy Act of 1974 (5 U.S.C. §552(a)) protects personal information held by the federal government by preventing unauthorized disclosures of such information. Individuals also have the right to review such information, request corrections, and be informed of any disclosures.

The right of privacy has been inferred in the U.S. Constitution (14th amendment) as well as Article I, Section 2 of the Illinois Constitution. The Constitutional right of privacy has developed alongside a statutory right of privacy which limits access to personal information, and indicates that the right of privacy of an individual must be

9

balanced against the state's compelling interests. These compelling interests include the protection of the individual's psychological health, and improving the quality of life. The right of privacy has evolved to protect the ability of individuals to determine what sort of information about themselves is collected, and how that information is used. The federal government has limitations on how it can collect personal information about an individual, particularly in the health arena. However, once that information is collected, the Federal government then has obligations towards the citizen about how that information is maintained, distributed and destroyed. In *Planned Parenthood v. Casey*, the Supreme Court recognized that many of the personal rights and liberties protected by the Due Process Clause of the 14th Amendment sound in personal autonomy.

In fact, the FDA and Congress clearly recognized these obligations in drafting the regulations of Part 1271. The problem is that the only contemplated parties in the HCT/P transaction, and as noted above, were the semen donor and the egg donor. There has been no provision in the currently-existing rules for the product of ART, eg someone like the Plaintiff. His interests have been ignored. His health information has been destroyed by the Federal Government without his consent, and pursuant to rules and regulations enacted by the Federal Government. This is, de facto, a violation of the Equal Protection Clause and Due Process Clause because the FDA's rulemaking which allows for a legal disposition of Petitioner's personal health information before he reaches the legal age of majority at which he can request such information, places him in the position of a Second Class Citizen with eternally incomplete genetic information.

Until Isel reached the age of majority, two years after he learned of his parentage, he was legally incapable of obtaining any information about his parentage, solely due to the regulations enacted by the FDA in 21 CFR 1271.55(d)(4) authorizing destruction of such "records pertaining to a particular HCT/P at least 10 years after the date of its administration, or if the date of administration is not know, then at least 10 years after the date of the HCT/P's distribution, disposition, or expiration, whichever is latest."

The FDA's statement in its Citizen Petition Response, that 21 CFR 1271.55(d)(4) does not mandate destruction at 10 years, but merely authorizes it, is a distinction without a difference when it comes to infringement of the Petitioner's Constitutional Rights, particularly since the age of majority is 8 years past the minimum destruction date. If the FDA refuses to mandate a longer period of retention than 10 years, then it is clear that the FDA is actually authorizing the destruction of important records documenting the genetic makeup of United States Citizens who exist solely because the FDA enacted rules regulating the ART industry. If the FDA did not regulate the ART industry, there would have been no sperm donor to lead to the birth of Petitioner. If the FDA did not allow for the destruction of records pertaining to the Petitioner for 50 years, as the Citizen Petition requested, then Petitioner would have had access to important records relating to his genetic makeup when he sought them after reaching the age of majority. It is an unfounded, unreasoned and arbitrary and capricious divestiture of Petitioner's rights for the FDA to say some records may be voluntarily preserved for longer than 10 years past a sperm recipient's birth.

10

To comply with its statutory mandate and act in a manner which does not divest Petitioner of his constitutional right to privacy and personal autonomy, the FDA must grant this Petition to Reconsider and amend the rules in Part 1271 as set forth in the Citizen Petition.

C. Environmental Impact

The action requested in this petition is subject to categorical exclusion under 21 CFR § 25.32. Therefore, neither an environmental assessment nor an environmental impact statement is required, and should not have been a factor in the determination of the Citizens Petition.

D. Economic Impact

The requested information is only required when requested by the Commissioner and following review of the petition, to submit additional economic impact information on the effect of this requested action. Therefore an economic impact statement is not provided at this time.

E. Certification

The undersigned certifies, that, to the best knowledge and belief of the undersigned, this Petition includes all information and views on which the Petition relies, and that it includes representative data and information know to Petitioner which are unfavorable to the petition.

Sincerely,
ROZOVICS LAW FIRM, LLC

Michelle J. Rozovics, Esq.
Counsel to Petitioner
Nicholas Isel

The undersigned certifies, that, to the best knowledge and belief of the undersigned, this Petition includes all information and views on which the Petition relies, and that it includes representative data and information know to Petitioner which are unfavorable to the petition.

Signature
Nicholas Isel
709 Mansfield Court
Oswego, Illinois 60543
630-923-2745

11