# Exhibit E
# FDRR



The Historic Pierson Building
263 King Street
Crystal Lake, Illinois 60014

P: (815) 479-9733
F: (815) 425-9773
E: mrozovics@rozovicslaw.com
www.RozovicsLaw.com

March 30, 2020

Division of Dockets Management
Food and Drug Administration
Department of Health and Human Services, rm 1-23
5630 Fishers Lane, rm. 1061
Rockville, MD 20852

CBER Ombudsman: Sheryl Lard-Whiteford, Ph.D
Center for Biologics Evaluation and Research
10903 New Hampshire Avenue
W071-7240
Silver Spring, MD 20993-002
cberombudsman@fda.hhs.gov

CDER Formal Dispute Resolution Project Manager

**RE: <u>FORMAL DISPUTE RESOLUTION REQUEST</u>**
Docket Number FDA-2016-P-2955
Date of Citizen Petition Filing 09/27/2016
Date of Response to Citizen Petition 08/13/2018
Date of Citizen Petition for Reconsideration 09/08/2018
Date of Response to Petition for Reconsideration 02/28/2020

On behalf of Petitioner, Nicholas Isel ("Isel"), we respectfully submit this Formal Dispute Resolution Request, in accordance with 21 CFR 10.75, of the CBER's response of February 28, 2020, denying the Citizen Petition for Reconsideration (hereinafter "2020 Response"), and the corresponding response which denied the Citizen Petition dated August 13, 2018 ("2018 Response"). The 2020 Response, although it took 18 months to respond, provided no new information or reasoning, and instead merely incorporated and repeated the information previously provided in the original 2018 response which denied the Citizen Petition.

I. Comprehensive Statement of each issue to be Resolved.

    a. The FDA's main objection to the Petitioner's Citizens Petition is that it claims it does not have the statutory authority to take the action requested. However, the 2020 and 2018 Responses fail to address the conflict between, on the one hand, Section 361 of the PHS Act, as interpreted by the FDA in their Responses to mean they were able to regulate communicable diseases to the exclusion of genetic diseases, and, on the

1

other hand, the intent of 21 CFR Part 1271 (as set forth in the Guidance for Industry, Regulation of Human Cells, Tissues and Cellular and tissue-Based Products (HCT/Ps), Small Entity Compliance Guide, incorporated into the Petition for Reconsideration, at fn1, which indicated these regulations are specifically intended to be provide "a comprehensive regulatory program for the regulation of human cellular and tissue-based product (now called human cells, tissues, and cellular and tissue-based products or HCT/Ps), which prior to 1997 was "highly fragmented".   See, eg, Section 21 CFR 1271.3(d), which indicates that all reproductive tissues are within the scope of the rules, not merely ones with communicable diseases.  In neither the 2018 Response nor the 2020 Response, does the FDA address any of the conflicts in language.  Instead, they rely on the existing language in Section 1271 to claim that the scope of the law in its current form excludes the desired change.  The Petitioner is aware that the law requires changes, and noted in the Request for Reconsideration that the changes in technology which allow for new, at-home genetic testing, such as 23 and Me, and other similar tests, have yielded much more information that was available to the progeny of donor semen and donor oocytes at the time the original FDA law was written.  The fact that technology has changed is supportive of the fact that the existing regulations require an update, and are not a reason for them to never be updated again, as the FDA appears to suggest.  It is impossible to have a non-fragmented and comprehensive legislative structure if the FDA refuses to regulate anything other than communicable diseases.

b.   The FDA acknowledged in its 2018 Response that "we understand the potential value of reproductive tissue donors' personal and medical information pertaining to genetic diseases or conditions, particularly to individuals conceived using these tissues, the Agency currently does not have the statutory authority to require the submission of such data." Petitioner contends, as asserted in its Request for Reconsideration, that such authority does specifically exist.  In fact, because the FDA's authority must be read consistently with, and in conjunction with, other Congressional Acts, the FDA is required to act in these circumstances.

c.    A timely example of the FDA's exercise of more than merely "communicable" diseases is in the recent regulations relating to COVID-19.  One of the pieces of information being tracked and sought to be prevented is transmission of the disease from mother to child. The FDA is not merely concerned with the infectious disease spread between living human beings, but is also concerned with the spread from parent to child. There has, as of yet, been no determination as to how COVID-19 would spread from mother to baby, and whether it is a result of a genetic mutation due to a change in the sequence of DNA, due to environmental exposure to the virus, or if it is multifactorial inheritance disorder, as

2

discussed on page 3 of its 2018 Response.  Yet, the FDA does not refuse to regulate the treatment of COVID-19 for pregnant women and ultimately children born with the virus, because it admits that its "vital mission to protect and promote public health."  See generally, FDA News Release, "FDA Announces Key Actions to Advance Development of Novel Coronavirus Medical Countermeasures", 27 January 2020, at https://www.fda.gov/news-events/press-announcements/fda-announces-key-actions-advance-development-novel-coronavirus-medical-countermeasures; FDA News Release, Coronavirus (COVID-19) Update: FDA Issues new Policy to Help Expedite Availability of Diagnostics", 29 February 2020, at https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-issues-new-policy-help-expedite-availability-diagnostics (stressing the FDA's need to adopt action which "reflects our public health commitment to addressing critical public health needs and rapidly responding and adapting to this dynamic an evolving situation.", quoting FDA Commissioner Stephen M. Hahn, M.D.): FDA Statement from Stephen M. Hahn, M.D., "Coronavirus (COVID-19) Update:  FDA Provides More Regulatory Relief During Outbreak, Continues to Help Expedite Availability of Diagnostics", 16 March 2020, at  https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-provides-more-regulatory-relief-during-outbreak-continues-help (stressing that the FDA has the "ability to pivot and adapt as the situation warrants in light of a public health emergency.  We are taking steps to support diagnostic development considering the urgent need.  We urge state authorities and commercial developers to take all necessary steps to ensure the availability of accurate tests.  Inaccurate diagnoses during a pandemic can impair prevention efforts and delay appropriate treatment for sick patients.")  ; FDA News Release, "Coronavirus (COVID-19) Update:  FDA Continues to Facilitate Access to Crucial Medical Products, Including Ventilators", 22 March 2020, at https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-continues-facilitate-access-crucial-medical-products-including  ("The FDA is doing everything we can to support patients, health care professionals, hospitals, medical product manufacturers and the public during this pandemic.  One of the most impactful steps we can take is to help with access and availability to life-saving medical treatments," said FDA Commissioner Stephen Hahn, M.D.)

d.  The FDA stated in the 2018 Response that  "we may, in the future, determine that extending the required retention period is necessary to prevent the introduction, transmission, or spread of communicable diseases. . . [but] we decline to expand the requirement at this time."  P.4 This admits that the FDA has the power to issue such an regulation, but it has not indicated why it will not.  In its 2018 Response, the FDA stated "The Petition does not adequately explain why expanding the required

3

record retention period beyond 10 years is necessary for preventing the introduction, transmission, or spread of communicable diseases." 2018 Response, at p.4. However, the Request for Reconsideration pointed out in detail, that Isel had illustrated he was still a legal minor and unable to take any legal action at the time the 10 year record retention period expired. Further, the legislation, as it currently exists, would not allow him to obtain his own records. These issues were not addressed at all by the FDA in either the 2018 or 2020 responses. These are not scientific, but are factual issues, which should be addressed by the FDA, and have not been.

e. If a semen or oocyte donor contains a genetic disease, does the FDA require disclosure and documentation of such disease(s) in the records that are currently maintained in accordance with Subpart C (Donor Eligibility) of 21 CFR 1271? In 1271.45, 1271.50, and 1271.75, for purposes of when an embryo is to be conceived from donor tissues, a donor-eligibility determination, based on donor screening and testing, must be made and a semen or oocyte donor who intends to have an embryo implanted, is an eligible donor "only if . . .the donor . . . is free from risk factors for, and clinical evidence, of infection due to relevant communicable disease agents and diseases. . ." for relevant communicable disease agents and diseases" is required for both the oocyte donor and semen donor, and no implantation can be done until the donor is determined to be eligible. The Canons of Statutory construction, as set forth in the prior Petition for Reconsideration, require that the sections of the CFR in Part 1271, be read consistently with, and to not be read in conflict with, the rights Petitioner Isel has under the Genetic Information Nondiscrimination Act of 2008, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, HIPAA, and the Family and Medical leave Act of 1993, and the Privacy Act of 1974, 5 USC 552(a), Isel has rights to his own medical information, to review such, request corrections, and be informed of any disclosures, and this includes any voluntary and confidential genetic testing information. His information is intrinsically tied with that of any semen or oocyte donor who donated sperm or eggs which led to his birth. Isel's rights, and those of every other living person who is the progeny of one of the facilities that the FDA has chosen to regulate under Part 1271, are impacted by the FDA's decisions to prevent access to records and information. Since the rules of statutory construction do not allow inconsistent interpretation of laws, these laws must be read to allow for Isel to gain access to his own records. He is legally prevented from gaining such access if the mandated time for records retention is only 10 years, as this allows the facilities which are under regulation and follow the rules set by the FDA, to destroy critical health information which he has a right to under other federal and state laws. This leads to inconsistent results, if it is read in accordance with the FDA's interpretation. This was not the intention of the legislature in writing the laws, which each had a

4

later date of drafting than Part 1271. The FDA never addressed the legislative interpretation standard in either their 2018 or 2020 responses.

f.  The FDA's interpretation of its mandate to exclude access to the records would also lead to an absurd and unconscionable result, as it deliberately creates a class of second class citizens, for whom none of the above-referenced laws regarding access to their medical records apply. If the FDA's interpretation was followed, it would require that an additional clause be written into each law, where none was intended or written by the legislature, which says, "except that no such rights shall be granted to offspring of a sperm or oocyte donor, as such persons shall have no rights relating to such medical information." As the above-referenced statutes did not exclude Isel, or others like him who are similarly situated, this absurd and unjust result cannot be the intended "mandate" of the FDA. The FDA's interpretation of their regulations ignores the interests of Petitioner and those similarly situated to him, and the impact upon them when they try to enforce their legal rights, despite the hundreds of comments that the FDA supposedly took into account during their consideration of this issue. The failure of the FDA to indicate, in any manner, or by reference to even a single comment, how they took these statutes and the rights of the commenters on this Petition, into account, demonstrates that the decision as made herein was arbitrary and capricious and not made in accordance with the legislative mandate of the FDA. See, eg, see the following links:

i.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0010

ii.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0016

iii.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0021

iv.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0029

v.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0036

vi.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0072

vii.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0093

viii.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0096

ix.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0106

x.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0111

xi.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0121

xii.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0125

xiii.  https://www.regulations.gov/document?D=FDA-2016-P-2955-0126

  xiv. https://www.regulations.gov/document?D=FDA-2016-P-2955-0127

  xv. https://www.regulations.gov/document?D=FDA-2016-P-2955-0138

  xvi. https://www.regulations.gov/document?D=FDA-2016-P-2955-0160

  xvii. https://www.regulations.gov/document?D=FDA-2016-P-2955-0165

  xviii. https://www.regulations.gov/document?D=FDA-2016-P-2955-0166

  xix. https://www.regulations.gov/document?D=FDA-2016-P-2955-0260

  xx. https://www.regulations.gov/document?D=FDA-2016-P-2955-0169

  xxi. https://www.regulations.gov/document?D=FDA-2016-P-2955-0285

  xxii. https://www.regulations.gov/document?D=FDA-2016-P-2955-0028

  xxiii. https://www.regulations.gov/document?D=FDA-2016-P-2955-0039

  xxiv. https://www.regulations.gov/document?D=FDA-2016-P-2955-0100

  xxv. https://www.regulations.gov/document?D=FDA-2016-P-2955-0129

  xxvi. https://www.regulations.gov/document?D=FDA-2016-P-2955-0135

  xxvii. https://www.regulations.gov/document?D=FDA-2016-P-2955-0233

  xxviii. https://www.regulations.gov/document?D=FDA-2016-P-2955-0322

These people all have concerns similar to Petitioner, and this demonstrates the Public Health nature of this issue. Yet the FDA failed to address any of these comments or the impact upon the public health of such people, and many, many more of them, of their inaccessibility of their sperm or oocyte health history. This leads to a new type of public health crisis, where people are unable to know what conditions they have, or what their children may have a disposition to have (even if they are carriers and not symptomatic with the disease), or even when or how to seek treatment for them.

g. Additionally, the FDA never explains why the term "communicable disease agents and diseases" as used throughout Part 1271 of the regulations, refers only to communicable diseases, as defined under section 361 of the Public Health Service Act, or has a broader implication. Another canon of statutory interpretation requires that no words be considered superfluous. The term "communicable disease agents" is used to refer to those conditions for which the FDA is testing and disqualifying donors under Part 1271. But this is not an exclusive term. There are two uses of the word "disease" in the identified phrase. Does the second use of the word "diseases" have a broader impact and use in this context, and one which is intended, under the Canons of Statutory Interpretation, to mean an additional type of disease other than communicable ones, such as

6

to include the transmission of genetic diseases from semen or oocyte donor to embryo? If this type of transmission is not included in the definition, what types of "diseases", as distinguished from "communicable disease agents", was it intended to refer to? Petitioner contends that the use of the term "diseases" is broader than "communicable disease agents" and therefore that the FDA improperly limited the scope of application under 1271 to exclude transmission of genetic diseases from sperm or oocytes to embryos.

Petitioner recognizes that this is likely the only section of the FDA's regulation to which genetic testing and genetic transmission of diseases apply. However, this is also the only regulations in which the FDA regulates Assisted Reproductive Technology. Thus, there is no other section of the FDA's regulation which deals with transmission of genetic material between humans. As such, it is a unique area. This does not mean it was not intended to be within the mandate. It means only that the FDA has not fully exercised the scope of its mandate, particularly since the regulations have not been updated to keep pace with the advent of at-home and commercial testing that allows donor children to identify their genetic makeup. The FDA cannot abdicate its responsibility because it is a unique area. The uniqueness of the area requires that it promulgate the regulations.

## II. A Statement of Proposed Possible Solutions and Outcomes

i. Amend Title 21 Code of Federal Regulations Part 1271.270(d) in regards to establishments involved in sperm and/or egg donation ART (Assisted Reproductive Technology) industries to require collection, upkeep, communication with donors/recipients of updates, and retention of all relevant personal and medical information from donors and recipients for a period of no less than 50 years instead of the currently required 10 year time span.

ii. Amend Title 21 Code of Federal Regulations Part 1271 to provide that, for the 50 year period of time set forth in the Citizens Petiton and Petition for Reconsideration, all personal information from an intended donor or a past donor shall be available to recipients and offspring of the donor, for the purposes of individual/public health and well-being.

## III. The Division and/or Office that issued the Decision and the Deciding Official

The Citizen Petition was issued by Peter Marks, M.D., Ph.D., Director, Center for Biologics Evaluation and Research on 13 August 2018. The Response to the Petition for Reconsideration was issued by Lowell J. Schiller, Principal Associate Commissioner for Policy, on 28 February 2020.

## IV. Meeting Request.

Petitioner requests a teleconference meeting with both deciding officials and their supervisors.

### V. List of Documents Previously Submitted to the Petition that are Deemed Necessary for Resolution of the Matter

All prior submitted documents, including all comments in the electronic docket, https://www.regulations.gov/docketBrowser?rpp=25&so=DESC&sb=commentDueDate&po=0&D=FDA-2016-P-2955, are considered necessary for the resolution of this matter. All comments were specifically incorporated into the FDA's 2020 Response, in its Footnote No. 1, at p.1, and reiterated again on p.3 ("We have reviewed the information in the Citizen Petition, the Citizen Petition Response, the Reconsideration Petition, and all the comments submitted to the docket." As of and are therefore relevant to its decision. As of the date of the 2020 Response, this included 331 Docket entries, including comments. As of the date of the 2018 Response, there were 97 docket entries. The FDA did not refer to or incorporate any specific responses in either its 2018 or 2020 Responses.

### VI. Statement Regarding No New Information Submitted

The undersigned certifies, that, to the best knowledge and belief of the undersigned, this Petition includes all information and views on which the Petition relies, and that it includes representative data and information know to Petitioner which are unfavorable to the petition. No new information has been submitted in support of the FDRR and the last deciding official received and had the opportunity to review all of the material now being relied upon for the sponsor's FDRR.

Sincerely,
ROZOVICS LAW FIRM, LLC

Michelle J. Rozovics, Esq.
Counsel to Petitioner Nicholas Isel

The undersigned certifies, that, to the best knowledge and belief of the undersigned, this Petition includes all information and views on which the Petition relies, and that it includes representative data and information know to Petitioner which are unfavorable to

the petition.  No new information has been submitted in support of the FDRR and the last deciding official received and had the opportunity to review all of the material now being relied upon for the sponsor's FDRR.

Signature
Nicholas Isel
709 Mansfield Court
Oswego, Illinois 60543
630-923-2745

9