UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS ISEL,<br><br>Plaintiff,<br><br>v.<br><br>U.S. FOOD AND DRUG ADMINISTRATION; KYLE DIAMANTAS, Acting Commissioner of Food and Drugs, U.S. Food and Drug Administration; GRACE GRAHAM, Deputy Commissioner for Policy, Legislation, and International Affairs, U.S. Food and Drug Administration; KARIM MIKHAIL, Director of the Center for Biologics Evaluation and Research (CBER), U.S. Food and Drug Administration; OLIVIA ZIOLKOWSKI, CBER Ombudsman, U.S. Food and Drug Administration; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., Secretary of the United States Department of Health and Human Services,<br><br>Defendants. | ) | No. 26 C 8697<br><br>Judge Durkin |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiff Nicholas Isel alleges in a five-count complaint spanning nearly 100 pages that the United States Food and Drug Administration (FDA) acted arbitrarily and capriciously in violation of the Administrative Procedure Act (APA) and in violation of his rights under the Equal Protection Clause when it declined Isel's request to amend a decades-old regulation in the manner Isel requested. Even without reaching their substance, Isel's claims fail because he lacks standing to proceed in federal court.

## Background

### I. The Regulatory Scheme

Isel's complaint focuses on 21 C.F.R. Part 1271, which contains regulations promulgated by FDA for the purpose of creating "an electronic registration and listing system for establishments that manufacture human cells, tissues, and cellular and tissue-based products (HCT/P's) and to establish donor-eligibility, current good tissue practice, and other procedures to prevent the introduction, transmission, and spread of communicable diseases by HCT/P's." 21 C.F.R. § 1271.1. An HCT/P is an "article[] containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." *Id.* § 1271.3(d). Reproductive cells and tissue, such as semen, oocytes, and embryos, are HCT/Ps. *Id.* § 1271.3(d), (l).

FDA promulgated the Part 1271 regulations pursuant to the Public Health Service (PHS) Act, which authorizes FDA to "make and enforce" regulations that "in [the agency's] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries" into the United States, or from one state into another. 42 U.S.C. § 264(a). One of these regulations, 21 C.F.R. § 1271.55(d)(1), provides that establishments covered by the regulation must maintain documentation of the "[r]esults and interpretation of all testing for relevant communicable disease agents in compliance with §§ 1271.80 and 1271.85 . . . [and] all donor screening for communicable diseases in compliance with § 1271.75." Relevant here, § 1271.55(d)(4) provides that establishments must "retain the records pertaining to a particular HCT/P at least 10 years after the date" of the HCT/P's "administration." *Id.* If the date of administration is not known, the establishment must retain the records "at least 10 years after the

date of the HCT/P's distribution, disposition, or expiration, whichever is latest." *Id.*; Dkt. 1, Complaint ("Compl.") ¶ 99.

FDA regulations also provide means for individuals to initiate administrative proceedings at the agency. Using what is called a "citizen petition," an individual can petition FDA to, among other things, amend or revoke a regulation. 21 C.F.R. § 10.25(a)(2). If FDA denies a citizen petition, the petitioner may petition FDA to reconsider the matter if the petition for reconsideration is filed within 30 days of FDA's original decision. *Id.* § 10.33(b). Per FDA regulations, FDA's decision in response to either of these petitions—a citizen petition pursuant to § 10.25 or a petition for reconsideration pursuant to § 10.33—constitutes a final agency action. *Id.* § 10.45(d). Separately, § 10.75 provides a mechanism that allows individuals to request that a supervisor at FDA review an employee's decision. *Id.* § 10.75(a)(3) & (c).

## II. Factual Background

Isel was born in 1985 after his mother used donated sperm that was provided by a facility called Repository for Germinal Choice (RGC). Compl. ¶¶ 36, 38. Isel learned about "his birth origins" about 16 years later in 2001. *Id.* ¶ 39. When he attempted to obtain records related to his conception from RGC, he learned that RGC had closed in 1999, and "all records (including those relating to his conception and sperm donor) had been destroyed." *Id.* ¶¶ 39, 41. Isel later discovered the identity of his biological father, and the two met in 2003. *Id.* ¶¶ 44-46. In 2005, Isel learned that his biological father had a history of mental illness, but Isel "lacks details" regarding his mental illness that were allegedly present in the now-destroyed records. *Id.* ¶ 47.

On August 31, 2016, Isel submitted a citizen petition to FDA pursuant to 21 C.F.R. § 10.25. Dkt. 1-1. The petition requested that FDA amend 21 C.F.R. § 1271.55(d)(4)[1] to require[2] that FDA-regulated establishments that manufacture HCT/Ps "involved in sperm or egg donation ART (Assisted Reproductive Technology) industries" retain records pertaining to an HCT/P for 50 years after the date of its administration, rather than the ten years currently required. *Id.* at 2. Isel explained in his petition that he sought the change because, among other things, he was unable to seek records related to his conception until after RGC had destroyed them and was thus unable to learn about his biological father's history of mental illness. *Id.* at 3. Isel's petition acknowledged that FDA's Part 1271 regulations are concerned with preventing the transmission of "communicable diseases" and conceded that mental illness is "not communicable in the traditional sense of the word." *Id.* at 4. But he nonetheless requested that the regulations be amended to allow donor-conceived persons to learn about their biological parents' medical history of mental illness later in life. *Id.* at 2-3. Isel also requested that all "personal information from an intended donor . . . be made non-confidential to potential recipients." *Id.* at 2.

FDA denied the petition on August 13, 2018. Compl. ¶ 63; *see also* Dkt. 1-2. FDA explained that it promulgated the Part 1271 regulations pursuant to Section 361 of the PHS Act, 42 U.S.C. § 264(a). Dkt. 1-2 at 3. Section 361 authorizes FDA to make and enforce regulations for the purpose of preventing the introduction, transmission, or spread of "communicable

---

[1] The petition originally requested that FDA amend 21 C.F.R. § 1271.270(d), which is irrelevant to record retention of reproductive HCT/Ps. FDA understood that Isel meant to challenge 21 C.F.R. § 1271.55(d)(4) and responded accordingly. *See* Compl. ¶ 100.

[2] The petition also included requests that are not the subject of this lawsuit, including that (1) FDA's Center for Biologics Evaluation and Research store "duplicate copies" of records pertaining to an HCT/P for 50 years to "provide 'document redundancy'" in the event that an FDA-regulated establishment's original copy of the records is destroyed, and (2) "all personal information" regarding egg and sperm donors be collected and "made non-confidential to potential recipients" due to "unintentional negative after-effects" of HCT/P donor anonymity. Dkt. 1-1 at 2.

diseases." FDA explained that the agency does "not consider genetic diseases, including mental illness, to be 'communicable diseases' within the meaning of the PHS Act because," they do not "arise as a result of an infectious agent or its toxic products." *Id.* As a result, FDA "decline[d] to issue regulations" aimed at "preventing the introduction, transmission, or spread of genetic diseases." *Id*. at 8.

Isel, through counsel, subsequently filed a petition for reconsideration pursuant to 21 C.F.R. § 10.33. Dkt. 1-3. In this petition, Isel argued that (1) FDA arbitrarily and capriciously refused "to initiate rulemaking and limit regulation of HCT/Ps to the prevention of communicable diseases," and (2) FDA's denial of the citizen petition was contrary to Isel's "constitutional rights under both the U.S. and Illinois constitutions." *Id.* at 4-12. On February 28, 2020, FDA denied the petition for reconsideration. The agency explained that the petition response had "comprehensively and adequately addressed" the requests in Isel's citizen petition, including those "specifically raised" in the reconsideration petition "regarding genetic disease transmission," and reiterated that Isel's citizen petition failed to provide adequate information to suggest that his requested amendments to the Part 1271 regulations "were necessary to prevent the introduction, transmission, or spread of communicable diseases within the meaning of section 361 of the PHS Act." Dkt. 1-4 at 4-5. On March 30, 2020, Isel filed a request for review through counsel pursuant to 21 C.F.R. § 10.75. Dkt. 1-5. FDA denied that request "without substantive comment" on July 24, 2020. Compl. ¶ 70; Dkt. 1-6.

## Argument

### I. Isel Lacks Standing.

Isel lacks standing to pursue his claims in federal court. To obtain judicial review, a plaintiff must show that he has "a 'personal stake' in the dispute," which not only "helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires," but also "serves to protect the 'autonomy' of those who are most directly affected so that they can decide whether and how to challenge the defendant's action." *Food & Drug Admin. v. All. for Hippocratic Med.* ("*Alliance*"), 602 U.S. 367, 379-80 (2024). To establish standing, a plaintiff must allege facts demonstrating that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" or "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). In addition, he must show that his "injury likely was caused or likely will be caused by the defendant's conduct" and "likely would be redressed by the requested judicial relief." *Alliance*, 602 U.S. at 382; *see also Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Isel alleges that he has been, and continues to be, "harmed by the permanent and irrevocable destruction" of the medical records that he contends "include[] the only contemporaneous-to-donation recorded health questionnaire and vital information and testing" concerning his father's "background, personal and familial physical and mental health conditions." Compl. ¶ 15. He further alleges that the "damage . . . extends" to a donor-conceived person's "biological children" and later generations. *Id.*

Isel fails to establish standing for several reasons. First, because the declaratory and injunctive relief Isel seeks is prospective, he "must establish a sufficient likelihood of *future* injury." *Alliance,* 602 U.S. at 1556 (emphasis added). Assuming arguendo that Isel has a legally

cognizable interest in his biological father's donor records,[3] those records were destroyed in or before 1999. Compl. ¶ 41. Because the records relating to his biological father have long since been destroyed, Isel cannot show that he faces an imminent future injury.

Even if Isel could establish an actual or imminent injury, he has not plausibly alleged causation. The "causation requirement screens out plaintiffs who were not injured by the defendant's action." *Alliance*, 602 U.S. at 383. The destruction of Isel's biological father's donation records in or before 1999, Compl. ¶ 41, occurred five years before FDA promulgated the regulation that he complains of in 2004, *see* 69 Fed. Reg. 29,786, 29,831 (May 25, 2004) (codified at 21 C.F.R. § 127.155(d)(4)), and sixteen years before he asked FDA to amend the regulation, Compl. ¶ 63. Thus, Isel has not plausibly alleged that FDA's refusal to amend its regulations in the manner he requested caused his alleged injury.

For the same reason, Isel fails to plausibly allege redressability. A favorable decision by this court ordering FDA to amend Part 1271 "to ensure that Donor-Conceived Persons are not deprived of their right to access their biological donor's Relevant Medical Record set from an FDA-regulated Establishment," Compl. at 86-87, would not affect the availability of *Isel's* biological father's medical records. *See, e.g., Am. Oversight v. U.S. Agency for Int'l Dev.*, No. 25 C 719, 2026 WL 592311, at *17 (D.D.C. Mar. 3, 2026) (plaintiff lacked standing to bring a claim

[3] Isel alleges that FDA "authoriz[es] destruction" of records, and that destruction "interferes with the rights of Donor-Conceived Persons to access health record information which impacts their own health." Compl. ¶ 27. But as the plaintiff, Isel bears the burden of identifying the source of these purported legal rights, which he fails to do. *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain . . . what specific legal right the plaintiff believes the defendant violated." (collecting cases)). Even assuming that such a right exists today, *see, e.g.*, Cal. Health & Safety Code §§ 1644.1(d), 1644.3(a) (requiring gamete banks to disclose identifying information to donor-conceived persons conceived with gametes collected on or after January 1, 2020), it is not conferred on Isel, who was born in 1985. Compl. ¶ 36.

that "rests . . . on physical records already destroyed" because "the irreversible destruction . . . forecloses any meaningful redress").

To the extent that Isel believes the denial of his citizen petition is sufficient to confer standing, Isel is mistaken; he still must meet all three elements of standing. *See, e.g.*, *Gettman v. DEA*, 290 F.3d 430, 434 (D.C. Cir. 2002) (petitioners who unsuccessfully petitioned DEA to initiate rulemaking "lack standing to appear before an Article III court" unless they can show "an injury in fact, both particularized and concrete, as required by the Constitution"); *Ctr. For Responsible Sci. v. Hahn*, 809 F. App'x 10 (D.C. Cir. 2020) (dismissing suit by organization that unsuccessfully petitioned FDA to amend a regulation for lack of standing).

Perhaps recognizing that he lacks standing, Isel repeatedly alleges that he seeks to amend Part 1271 to protect "his existing biological children" and "future biological descendants" as well as *other* donor-conceived persons. *See, e.g.*, Compl. ¶¶ 24, 49, 50, 82, 133, 140, 178. But Isel's biological children and their descendants lack standing for the same reason he does: the donor records allegedly relevant to them have already been destroyed. And Isel's claim to sue "for similarly situated Donor-Conceived Persons" fares no better. This is not a putative class action, and it is a "well-established . . . principle" that "a litigant cannot sue in federal court to enforce the rights of third parties." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008). Although there are some exceptions to this rule, *see Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 384-85 (7th Cir. 2020) (discussing exceptions), Isel does not allege that he meets any of them.

While Isel may have a "strong opposition to the government's conduct," the "intensity of a litigant's interest" is insufficient to establish standing. *Alliance*, 602 U.S. at 394. Because Isel cannot meet his burden to show that the challenged FDA actions caused him a legally cognizable

injury that is likely to be redressed by a favorable ruling from this court, he lacks standing to pursue his claims.

**Conclusion**

For the foregoing reasons, the court should dismiss Isel's complaint with prejudice for lack of standing.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Michael T. Morrell
MICHAEL T. MORRELL
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 469-6206
michael.morrell@usdoj.gov

Of Counsel:

BENJAMIN A. ROBLES
Acting General Counsel
U.S. Department of Health and Human Services

SEAN R. KEVENEY
Chief Counsel
Food and Drug Administration

WENDY S. VICENTE
Deputy Chief Counsel, Litigation

ELIZABETH TETER-GOSSMANN
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, Maryland 20993-0002